# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAMUEL KATCHEN and CHARLES L. FERRARI,<br><br>                Plaintiffs,<br><br>  v.<br><br>SMITH BARNEY, INC., and its successor in interest, SALOMON SMITH BARNEY INC., CITIGROUP, THE CITIGROUP 2000 STOCK PURCHASE PLAN, TRAVELERS GROUP 401(K) SAVINGS PLAN, THE TRAVELERS GROUP PENSION PLAN and CITIGROUP GLOBAL PRIME BROKERAGE,<br><br>                Defendants. | Civil Action No.: 04-3762 (JLL)<br><br><br>**O P I N I O N  &  O R D E R** |

**APPEARANCES:**

Kevin B. Walker, Esq.
Kirsten McCaw Grossman, Esq.
BRESSLER, AMERY & ROSS
A Professional Corporation
325 Columbia Turnpike
Florham Park, NJ 07932
    Counsel for Defendants

Jonathan E. Levitt, Esq.
FRIER & LEVITT, LLC
19 Microlab Road, Suite A
Livingston, NJ 07039
    Counsel for Plaintiffs

LINARES, District Judge.

This matter comes before the Court on Defendants', Smith Barney, Inc., Salomon Smith Barney, Inc., Citigroup Global Markets, Inc., The Citigroup 2000 Stock Purchase Plan, The Citigroup 401(k) Plan and the Citigroup Pension Plan (hereinafter collectively referred to as "Defendants"), motion to compel arbitration and stay this proceeding. The Court decides this motion without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons that follow, this Court concludes that Defendants' motion should be GRANTED.

## BACKGROUND FACTS

The relevant facts in this matter are largely undisputed. Plaintiffs, Charles Ferrari and Sam Kitchen (hereinafter collectively referred to as "Plaintiffs"), were formerly employed by Smith Barney as Financial Consultants. They joined Smith Barney in 1996. Plaintiffs commenced the present action after Smith Barney allegedly failed and refused to pay them substantial commission and finder's fees that are due and owing.

Plaintiffs commenced this action upon allegations of breach of contract, constructive termination, violations of ERISA, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and fraud and misrepresentation. According to Plaintiffs, this matter is primarily a breach of contract action arising out of the Smith Barney Financial Consultant Compensation Plan book (the "Compensation Book"). (Pl. Opp. at 2). Plaintiffs acknowledge that certain claims against Smith Barney must be arbitrated and that their ERISA Count must be "stayed", however since the Compensation Book does not contain an arbitration clause, Plaintiffs argue that claims arising out of compensation issues are not subject to arbitration. (Pl. Opp. at

1).

The Uniform Application for Securities Industry Registration or Transfer ("Form U-4") contains the following provision:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rule, constitutions, or by-laws of the organizations indicated in Item 10 . . . .

(Maribeth Robinson Affidavit ("Robinson Aff."), Uniform Application for Securities Industry Registration or Transfer ("Form U-4"), Ex. L; Robinson Suppl. Aff., Ex. A).

The Employment Application, signed by both Plaintiffs, contains the following arbitration clause:

> I understand that the Company has adopted alternative dispute resolution procedures to resolve any dispute related to my employment or termination of employment. I agree to comply with Travelers Group Dispute Resolution Procedures and Travelers Group Employment Arbitration Policy in any such dispute with the Company, its employees or agents.

(Robinson Aff., Employment Application, Exs. A and B).

The Smith Barney Human Resources Division Principals of Employment identifies the following claims that must be arbitrated:

> Fourth, you agree to follow our dispute resolution/arbitration procedures for employment disputes. While we hope that disputes with our employees will never arise, we want them resolved promptly. These procedures include all employment disputes (including termination of employment) that you might have with Travelers Group. . .
>
> These include, but are not limited to, all claims, demands or actions under title VII of the Civil Rights Act of 1964, the Civil Rights Act of

> 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974, and all amendments to the aforementioned, any other Federal, State or local statute or regulation regarding employment, discrimination in employment, the terms and conditions of employment, or the termination of employment, and the common law of any state.

(Robinson Aff., Smith Barney Human Resources Division Principals of Employment, Ex. D).

The Smith Barney Human Resources Division Employee Acknowledgment compels arbitration in the following circumstances:

> I agree that any controversy or claim arising out of or otherwise relating to my employment or termination of employment shall be resolved through binding arbitration in accordance with the arbitration procedures of the New York Stock Exchange (NYSE) . . . . without limiting the generality of the foregoing, claims, demands or actions under title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974, and the other Federal state and local statute or regulation recording of, discrimination in employment, or the termination of employment, at the common law of any state.

(Robinson Aff., Smith Barney Human Resources Division Employee Acknowledgment, Ex. F).

The Travelers Group/Smith Barney Employment Arbitration Policy specifies the following with regard to arbitration:

> The Policy makes arbitration the required, and exclusive, forum for the resolution of all disputes based on legally protected rights (i.e., statutory, contractual or common law rights) that may arise between an employee or former employee and the Travelers Group . . . including claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans With Disabilities Act, the Employee Retirement Income Security Act of

> 1974 and any other Federal, State or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment.

(Robinson Aff., Travelers Group/Smith Barney Employment Arbitration Policy, Ex. C at 5).

"Plaintiffs concede that the 'ERISA' claim must be stayed pursuant to the relevant agreements." (Pl. Opp. at 1). However they continue to argue that their "claims do not derive from common law or statutory law. This is a breach of contract claim, where the contract at issue does not contain an arbitration clause." (Id.).

Defendants presently move before this Court to compel arbitration, arguing that Plaintiffs have knowingly waived their right to pursue a claim in court. Accordingly, Defendants maintain that they are entitled to an Order compelling arbitration of all of the claims set forth in Plaintiffs Complaint and to stay this proceeding pending the conclusion of arbitration.

## **LEGAL STANDARD**

A.   **Standard for Arbitration**

Defendants filed the instant petition to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. Section 4 of the FAA provides in, relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. The Act dictates that any agreement to settle a dispute by arbitration "shall be

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA permits a district court to compel, or enjoin, arbitration as circumstances may require.  9 U.S.C. §§ 3,4; John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998).  The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  These provisions evidence a "liberal federal policy favoring arbitration agreements."  Id. at 24.  In order for the FAA to apply, the district court must find that the contract with the arbitration provision "evidenc[es] a transaction involving [interstate] commerce."  Id. (citing 9 U.S.C. § 2).  This is not a rigorous inquiry; in fact, the contract "need have only the slightest nexus with interstate commerce."  Crawford v. W. Jersey Health Sys. (Voorhees Div.), 847 F. Supp. 1232, 1240 (D.N.J. 1994) (citations omitted).

The Supreme Court has ruled that the FAA requires enforcement of arbitration agreements in the employment context.  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991); see also Crawford, 847 F. Supp. at 1242-43 (enforcing arbitration of Title VII and NJLAD claims).  In Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 227 (3d Cir.), cert. denied, 522 U.S. 915 (1997), the Third Circuit explained that "employees were not included within the class of those excepted from the operation of the FAA, and hence were required to arbitrate their disputes . . . ."

In addressing a motion to compel arbitration, a court must determine: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and (3) whether Congress intended the asserted federal claims to be nonarbitrable.  Parker v. Hahnemann Univ. Hosp., 2001 WL

797247, at *5 (D.N.J. Jan. 15, 2001) (citing Hooters of Am., Inc. v. Phillips, 39 F. Supp. 2d 582, 609-10 (D.S.C. 1998)).  The parties disagree only on the first prong.  Plaintiffs maintain that element one is not met, arguing that the subject clauses fail to clearly and unmistakably set forth their purported purpose to deprive Plaintiffs of their right to sue.

The FAA centers around contract interpretation.  AT & T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986); Harrison v. Nissan Motor Corp. in U.S.A., 111 F.3d 343, 350 (3d Cir. 1997) ("'[A]rbitration is [a] creature of contract, a device of the parties rather than the judicial process.  If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration.'") (quoting AMF, Inc. v. Brunswick Corp., 621 F. Supp. 456, 460 (S.D.N.Y. 1985)); Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, AFL-CIO, 982 F.2d 884, 888 (3d Cir. 1992).  State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002).  The New Jersey Supreme Court has held that "parties to an agreement may waive statutory remedies in favor of arbitration . . . ."  Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 773 A.2d 665, 670 (N.J. 2001) (citations omitted).  With this legal framework in mind, the Court will now examine Defendants' motion to compel arbitration and stay the proceedings.

**LEGAL DISCUSSION**

A.     **Agreement to Arbitrate**

Defendants maintain that Plaintiffs have knowingly and voluntarily waived their right to a court hearing in favor of arbitration.  In New Jersey, there is a general policy in favor of arbitration of disputes.  Garfinkel, 773 A.2d at 670 ("[O]ur jurisprudence has recognized arbitration as a favored method for resolving disputes.") (citing Barcon Assocs. v. Tri-County Asphalt Corp., 430 A.2d 214, 217 (N.J. 1981)).  Morever, an agreement to arbitrate should be read liberally in favor of arbitration.  J. Baranello & Sons, Inc. v. City of Paterson, 403 A.2d 919, 921 (N.J. Super. Ct. App. Div. 1979) (citing Moreira Constr. Co. v. Township of Wayne, 238 A.2d 185, 188 (N.J. Super. Ct. App. Div.), certif. denied, 242 A.2d 15 (N.J. 1968)).  An agreement to arbitrate statutory employment claims is binding on the employee when he or she has knowingly waived the right to a court hearing and has clearly agreed to the terms of the agreement.  Leodori v. CIGNA Corp., 814 A.2d 1098, 1104 (N.J.) ("[A] waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim."), cert. denied, 540 U.S. 938 (2003); Martindale v. Sandvik, 800 A.2d 872, 883 (N.J. 2002) (arbitration agreement enforced because, among other things, it "was clear and unambiguous"); Garfinkel, 773 A.2d at 672 ("This Court will not assume that employees intend to waive [statutory] rights unless their agreements so provide in unambiguous terms."). Furthermore, there must be an unambiguous writing that clearly establishes that an employee intended to waive the right to sue.  As the New Jersey Supreme Court has observed:

> In respect of specific contractual language, [a] clause depriving a citizen of access to the courts should clearly state its purpose.  The point is to assure that

> the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue. As we have stressed in other contexts, a party's waiver of statutory rights must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.

Garfinkel, 773 A.2d at 670 (internal quotations and citations omitted). Accordingly, the Court must be convinced that a claimant "actually intended to waive his statutory rights." Id. at 673. In light of the relevant facts and case law, this Court holds that Defendants have met their burden of demonstrating that an agreement to arbitrate was made.

In resolving whether the parties agreed to arbitrate, this Court is guided by the New Jersey Supreme Court's decision in Leodori. In making that determination, that court asked the following questions: (1) whether the relevant waiver-of-rights provision reflects an unambiguous intention to arbitrate a claim; and (2) if so, whether the record before the court indicates that plaintiff clearly had agreed to that provision. Leodori, 814 A.2d at 1104. In addressing the first question, this Court observes that five different documents demonstrate an intent by the parties to arbitrate all employment-related claims. This fact is clearly reflected in both the Employment Application and Employee Handbook. (Robinson Aff., Exs. A, F). The relevant provision lists federal statutes by name as falling within its purview, as well as statutory, contractual or common law rights. (Robinson Aff., Ex. F). The Employee Acknowledgment specifically provides as follows:

> The disputes to be arbitrated include...claims, demands or actions under...the Employee Retirement Income Security Act of 1974, any other federal state or local statute or regulation regarding employment, discrimination in employment, or the termination of employment, and the common law of any state.

(Robinson Aff., Ex. F).  In addition, the Principles of Employment includes similar language.  (Robinson Aff., Ex. D).  This language satisfies the requirement that such clauses provide an unmistakable conveyance of an employee's willingness to waive his or her statutory remedies.  Leodori, 814 A.2d at 1105 (citations omitted).

Plaintiffs argue that their contract claim cannot be compelled to arbitration because the Compensation Book does not contain an arbitration clause, and none of the arbitration agreements specifically references the Compensation book.  Plaintiffs' argument, however, is without merit.  In Martindale v. Sandvik, Inc., 800 A.2d 872 (N.J. 2002), the court discussed its prior holding in Garfinkel to shed light on their analysis:

> [W]e did not require a party to 'refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights.'  Instead, we instructed that 'a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination.'

Id. at 883 (citations omitted).  This Court is satisfied that despite the absence of a specific reference in the arbitration clause to the statute or legal claim at issue, i.e. commissions and finder fees, Plaintiffs' consented to arbitration of employment disputes by signing the Smith Barney documents.

A further alleged deficiency is that neither the Form U-4, nor the Smith Barney arbitration policies cover disputes pertaining to finder's fees and commissions arising out of the Compensation Book.  This argument is also unavailing.  The Form U-4, that Plaintiffs signed, requires arbitration of those claims required to be arbitrated under the NASD's rules.  Section 1 of the NASD Code provides, in part, that a "dispute, claim or controversy eligible . . . arising out

of the employment . . . shall be arbitrated under this Code . . . ." (Pl. Opp. at 13). Plaintiffs' contract claim asserting an entitlement to commissions for services rendered during their employment at Smith Barney clearly arises out of their employment.

Since the first question under <u>Leodori</u> is answered in the affirmative, the next step is to determine if the record before the Court indicates that Plaintiffs clearly agreed to the waiver-of-rights provisions. <u>Leodori</u>, 814 A.2d at 1104. A valid waiver "results only from an explicit, affirmative agreement that unmistakably reflects the employee's assent." <u>Id.</u> at 1105. The Court will not assume that employees intend to waive those rights unless their agreements provide as such in unambiguous terms. As the New Jersey Supreme Court has noted, "a party need [not] refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights. To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." <u>Garfinkel</u>, 773 A.2d at 672. Therefore, in order to enforce a waiver-of-rights provision in this setting, the Court "requires some concrete manifestation of the employee's intent as reflected in the text of the agreement itself." <u>Id.</u>

Here, Plaintiffs signed <u>five</u> distinct documents each containing arbitration provisions. In <u>Sarbak v. Citigroup Global Markets, Inc.</u>, 354 F. Supp. 2d 531 (D.N.J. 2004), this very Court held that the plaintiff's actions in signing three distinct documents each containing arbitration provisions, was a "concrete manifestation of her assent." <u>Id.</u> at 541. Furthermore, if Plaintiffs had an issue of confusion or ambiguity as to the contractual language, Plaintiffs had a duty to seek clarification. The Principles of Employment specifically state, in pertinent part:

> Again, it is your responsibility to read and understand the dispute resolution/arbitration procedures. If you have any questions, now or in the future, please ask.

(Robinson Aff., Ex. D). Accordingly, the waiver-of-rights provision before the Court properly reflects that Plaintiffs knowingly and unambiguously agreed to arbitrate the disputed claim.

**B.      Stay**

Defendants maintain that the proceedings must be stayed pending arbitration pursuant to the FAA. The FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. "If the issues in the case are within the contemplation of the arbitration agreement, the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay." U.S. v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001) (citing In re Complaint of Hornbeck Offshore Corp., 981 F.2d 752, 754 (5th Cir. 1993)); see also Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 937 (4th Cir. 1999) ("When a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the FAA commands the federal courts to stay any ongoing judicial proceedings, 9 U.S.C. § 3, and to compel arbitration, id. § 4."). As this Court has already determined that Plaintiffs' claims are arbitrable, the FAA mandates that the Court stay this proceeding and compel Plaintiffs' claims to an arbitrable forum.

## **CONCLUSION**

For the foregoing reasons, it is on this 2nd day of August 2005, hereby

**ORDERED** that Defendants' motion to compel arbitration and stay this proceeding is **GRANTED**.


|  |  |
|---|---|
|  | /s/   Jose L. Linares |
| DATED: August 2, 2005 | JOSE L. LINARES, |
|  | UNITED STATES DISTRICT JUDGE |